Good morning, Your Honors. If you'll please support, my name is Shannon Giles. I represent plaintiffs' appellants in this case, John Guido and Dennis Rankin. How will you and the EEOC be sharing time? We have agreed that we will split the 15 minutes. I will have the 10 minutes, and I will cede 5 minutes of the time to counsel for the EEOC. Just watch the clock. Mislaid plans don't always mature. I understand. Thank you. The basis of our appeal in this case is two-fold. First, we argue that the statute, the ADEA, should be interpreted, based on its plain language, in a manner that excludes the political subdivision, in this case Mount Lemmon Fire District, from the 20-employee requirement that is stated in the first part of that definition. Counsel, let's say that what you end on, and I agree with you, I think it's pretty clear, but we have three other circuits that disagree, and our own Miller v. Maxwell International seems to disagree. Does it matter that we would be creating a circuit split if we agree with your and the EEOC's construction of the statute? Well, of course it would create a circuit split. That is the question before the court. Our position is that the language of the statute is plain, and the courts that have ruled otherwise have found it to be ambiguous. In the analysis, I mean, in a way, you've got three circuits, federal circuits, that say it's ambiguous. You say it's unambiguous. I have to agree with you, I think it's probably unambiguous, pretty straightforward, it matters that during construction, but some pretty smart people in other circuits have said differently, so it's kind of hard to say off the bat that it's so obviously ambiguous, unambiguous rather, because these other people have said it is ambiguous. And I'm just troubled with how we can say, when you have other people take the exact opposite position, that this is unambiguously plain and nobody can misconstrue it. Well, it is accepted law that we have to look to the plain language of the words, and to construe it otherwise really requires the reader to ignore the plain meaning of the words also that is used in the statute. We've got to still enroll all the slaughterhouse cases, too, right? Because the privileges and immunity clause is really clear, but they just wrote it out of existence. We have to follow it, right? I'm unable to speak to that, Your Honor. But there are other places we can look. When we look to Title VII, we have Title VII that was amended in 72, and the ADEA that was amended in 74. If we look carefully at those statutes, they were amended in very different ways. Congress could have done what it did with Title VII. Let me ask you one other thing. We grant Chevron deference to an agency that construes an ambiguous law. Do we owe any deference to the EEOC when we construe an unambiguous law? I don't believe that the deference comes into play because it is our position that the statute is unambiguous, and that the EEOC has interpreted it correctly. Okay, but I guess what I'm saying is the EEOC then is appearing, in effect, without any deference at all in the government agency. They won't appear, but we don't owe them any deference, right? No, I believe we do owe deference. I mean, in this case, we also have cause findings from the EEOC on behalf of those plaintiffs. But we don't owe any Chevron deference? I believe we do owe deference to the EEOC's position, yes. I am not able to speak to that, Your Honor. So when we look at the statute, we can also look to the ways in which Title VII and the ADEA were amended very differently. But the way when you look at Title VII, the addition of states and political subdivisions into its definition of employer was added within the definition of person. In this case, two years later, Congress chose not to do it that way. They could easily have amended the definition of person the way that they had done when they amended Title VII, but rather they chose to add this section that they added to 630B of the ADEA. And it's telling also, I believe, that the ADEA was amended in connection with the FLSA. And in some ways, it follows the FLSA in a way that Title VII does not. The remedies under the Age Discrimination and Employment Act are very different than the remedies under Title VII. The Age Discrimination and Employment Act offers no compensatory damages as a plaintiff would get in a Title VII discrimination case. And instead, it includes liquidated damages in the form of double pay, much the same as the FLSA. So it is a term of statutory interpretation. We have to accept that the Congress meant plainly to do what it did, in fact, with the language. I do also want to speak to the second portion of the position of the plaintiffs, John Guido and Dennis Rankin, and that is that the volunteer firefighters who were on the roster for Mount Lemmon Fire District, the district court erred in concluding that those firefighters should not be included as employees. If we look to the district court's order on that issue, the district court cited a Second Circuit case for the proposition that whether those volunteer firefighters received benefits that were substantial enough to render them employees was a question of fact. The district court then went on to compare the benefits that the Mount Lemmon Fire District firefighters received to other cases in which those benefits had been examined. And the end result is that the district court really did engage in analyzing questions of fact that were properly, shouldn't have been properly left to the jury. You can go back to the first of all question. What cases are you primarily relying on? The District of Alabama case Holloway. Which one? Holloway. Holloway. In the District of Alabama in 2014, which is, what, some 30-some years after the Kelly case. And how do you approach Kelly? What's wrong with Kelly? Well, as I said, the reasoning in Kelly is flawed. Because Kelly started with the premise that both parties had presented a fair and reasonable interpretation of the statute. That's what Kelly said. And concluded that because the court believed that both interpretations were fair and reasonable, that there was ambiguity in the statute. All of the cases that follow Kelly also find that there is ambiguity in the statute. And go on to look at the statutory, you know, the history of the statute, which really, in our view, doesn't, I mean it doesn't speak specifically to this issue at all. So, like I said, the comparison, though, to the other discrimination statutes leads to the conclusion, again, that Congress had intention in mind to separate a state and political subdivision from that 20-employee requirement. Very different from what it did in 10.8 Amendment Titles 7 and 72. Thank you, counsel. Unless the panel has additional questions, I'm going to turn this over to counsel for the EEOC. Very well. Any other questions? Questions? May it please the Court. Judge Buhl. My name is Anne Noel-Acalino for the EEOC as amicus. We weighed in, of course, in this case to address a single issue, which is the matter of first impression in this court, concerning whether the 20-employee requirement applies to states and political subdivisions. It's our longstanding view that the 20-employee requirement does not apply, and we base that on the plain language of the statute. So let me ask you, since you work for the government and the EEOC, I imagine you're very familiar with Chevron deference and our deference and the like. Since there's no ambiguity in the statute from your perspective, do you agree that this court owes no deference to the EEOC's construction of the statute? Chevron deference, I think, would be inappropriate. Our argument here is based on the plain language of the statute, so you don't need to defer to that. The level of deference that you could accord to us if you thought that the statute was ambiguous would be Skidmore deference, which looks towards the validity of our reasoning, the consistency of our position, the thoroughness. I could point out for consistency and thoroughness, you've taken this position for 30 years since the Kelly case, EEOC v. Myclova. This has always been our view of the statute. And, Your Honor? Help us sort out Kelly and the other cases. Would you go the other way? I'd be happy to do that. And I understand, of course, there are now four circuit decisions against us, but they all go down to Kelly. Kelly was the first circuit decision to rule against us, and respectfully, Your Honor, the decisions that came after Kelly, the cursory analysis was kind of hooking on to Kelly and following that reasoning brought out a lot of scrutiny. The problem with Kelly, I think there are at least two or three problems with that decision, and the first is that Kelly found that the statute was ambiguous. It's not. You can only say that the statute is ambiguous by taking out that word also. The second sentence of 630B says the term employer also means. What the Kelly court effectively did was to remove also, which under the dictionary means in addition to or besides, and insert the word includes. But that's just not what the statute says. And the Kelly court got there by saying, well, that can possibly be what Congress had intended to do, but it's not really for the court to decide or speculate about what Congress intended to do. The Supreme Court has told us that our duty, the court's duty, is to apply a statute the way that it was written. So that's the first error that the Kelly court made, the most important error that the Kelly court made, and the Holloway court recognized it, the decision from the Northern District of Alabama, and they agreed with our view that the statute is unambiguous. But I think the second fundamental error that the Kelly court made was in its interpretation of the legislative history, what it gleaned from that legislative history. There just can't be any doubt that the way that Congress opted to amend the statute, the Age Act in 1974, was different than the way it could have been in Title VII, and this really gets into the weeds of the statute and can be a little bit hard to follow. But originally both statutes had defined employer with an exclusionary provision for states and political subdivisions. So Title VII and the Age Act both struck that exclusion for the definition of employer, but for Title VII, what Congress did was to include in the definition of persons state and political subdivisions, and since Title VII defined employers as a person of 20 or more employees, there's just no doubt under Title VII that the numerosity requirement there applies to state and political subdivisions. But just two years later, so Congress knew what it had done two years earlier, Congress opted to amend the Age Act not by adding states and political subdivisions to 630A, which defines persons, but instead added to include states and political subdivisions to the definition of employer in that second sentence of 630B. Now that's something deliberate. We can't just disregard what Congress did or say that it was inartful or unintentional. We have to go with the words that Congress gave us. So we think it's unambiguous. So it now points to those two flaws, I think, that are in the Kelly decision and the circuit decisions that followed. I think it's easier once one circuit has spoken to follow them. So I encourage you not to be hesitant to make a circuit split if this Court agrees that the statute is unambiguous and plain. It should be applied according to its terms. And then I think the third point, Your Honor, that you had raised was about Miller. I do think that Miller sort of suggests 630B imposes the numerosity requirement on small entities, arguably. This Court in passing suggested it applied to states and political subdivisions. I think that that was dicta. As I read Miller, it was really just holding that there is no individual liability under the Age Act, which is the battle that the EEOC and others won and lost long ago. So I don't think that you're tied to Miller's statement there, and I invite you to give a fresh look to it. I mean, you know, they put the hard case law on that dicta. I'm hoping it says that it does tie it to you. It does tie it to you. Okay. Well, I hope that you're swayed then just by our plain language analysis. And I don't think in Miller, though, this was really presented to this Court in a thoughtful, well-breached way that it is now. I guess I could talk a little bit about the FLSA. As you know, the Age Act was amended simultaneously with the FLSA, which does not have any employee numerosity requirement. So Kelly sort of seemed to gloss over that as well. If Congress is amending the FLSA to expand coverage to government employees without any numerosity requirement, doesn't seem like too much of a stretch to think that Congress had the same thing in mind when it was amending the Age Act. Were there other statutes which limit the number of employees within state government, state agencies? I don't know off the top of my head, Your Honor. Title VII, the Age Act, speaking out a lot of threats to the Disability Act, would be like Title VII. There are no exclusions or no limitations with respect to size of agencies? Under other statutes besides Title VII, the Rights of the Disability Act, the Age Act, not that I am in my lane of traffic. All right. Thank you. Anything further, Counsel? No. Thank you, Your Honor. Thank you. We'll hear from the other side. Good morning. May it please the Court. Jeff Quintoro on behalf of the Appalachee Mount Lemmon Fire District. The issue before this Court really requires a three-part analysis. I think all parties agree on that. The starting point, the threshold question, is what you've been speaking with other counsel about, which is, is the definition of employer under the ADA ambiguous? Number two, if the answer is yes to the threshold question, what does the legislative history tell us? And then number three, specific to this case, how many employees did the fire district have during the relevant timeframes? I want to go back to the threshold question, whether the definition of employer is ambiguous. I think it's important to underscore that this is not a question of whose interpretation is right or who is wrong. It just requires two reasonable interpretations of the language. The interpretation offered by the appellants and the EEOC is reasonable. The language was split in two sentences on purpose. The word also, you can look in the definition for, or in the dictionary for the definition of the word also, it seems to be a reasonable interpretation of that statute, that the 20 employee threshold only applies to the first sentence contained within that definition. But I suggest it is also reasonable to read the language as we read it, as the Seventh Circuit has read it, the Sixth Circuit has read it, the Eighth Circuit has read it, and now the Tenth Circuit has read it, which is that it can also mean that the word also, pardon the redundancy of that word, but the word also brings in the first sentence of the 20 employee threshold to the second sentence, which then covers an agent of such a person, or a state or political subdivision, thereby bringing the 20 employee threshold into the second sentence. That is also a reasonable interpretation. And, therefore, once you have two reasonable interpretations of the statute, it justifies this court, as the other circuit courts have done, to then analyze the legislative history. Yes, what do we do with the first subsection after the word term? The term also means, one, any agent of such a person. Of course, person clearly applies to the person in the first sentence of the section, but when you get to two, there is no such limitation. It just is a state or political subdivision. That's correct, Your Honor. Let me address the first clause of the second sentence. The agent of such a person, and you're correct, person refers back to the definition of person in the first sentence. Well, it's not definition of person. It's definition of employer, is it not? True, correct. But the definition of employer includes the word person, which is then otherwise defined. Because the word person is not included in the second section. That's correct. Okay. The way our view of that first clause of the second sentence is, first of all, you have to, from our perspective, treat the first clause and the second clause of the second sentence the same. It would make no sense, from our perspective, to treat those two clauses within the same sentence differently. The appellants, Mr. Guido and Mr. Rankin, in their briefing suggest that you should treat them differently. We don't think you should. The EEOC says you treat them the same, but any agent doesn't have a 20-employee threshold. So if you look at the Miller case, which was mentioned earlier, which suggests to us, and it didn't deal with the issue before the court directly, of course, but it suggests to us that the purpose of this agent language was to If you don't apply the 20-employee threshold to agent, then you could have a situation where you could have an employer with, let's say, 10 employees, so less than 20, an employer with 10 employees who's not subject to the ADEA. You could have an agent of that employer who, let's say, supervises or controls or has 25 employees. You would then have a situation, if you assume that the 20-employee threshold doesn't fall down to the second sentence, you could have a quite bizarre scenario, legally, where you'd have an agent of an employer subject to the ADEA, but the employer itself not, which seems to be inconsistent with Miller, and its direction that respondents, superiors, should apply within the statute. It seems to suggest to us that you're all in, you're all out, and that if an employer is subject to the ADEA, it would only make good common sense and legal sense that an agent of the employer would also be subject to the ADEA. And it doesn't say agent of employers. It says agent of such a person, and the person is engaged in the industry within the workforce. That's correct. But that is the hook. So it's agent of such a person. We read that language, that the word person there is referring to a person in the first sentence, an employer. An employer means a person, et cetera. Okay? The second sentence doesn't say that. The second clause of the second sentence does not include person. That's correct. That second clause is just specific to the governmental employers. And so what Congress could have done. I guess what's bothering me is how do you connect up the 20-person requirement with subsection 2, which doesn't refer to person? Very well, Your Honor. To get to subsection 2, you have to go through the two-step analysis that I mentioned at the beginning, which is number one, ambiguity, and then number two, legislative history intent. And it really falls on the second part of that analysis, the legislative history. Why did Congress make this amendment in 1974? What do the writings tell us about what was going on through their minds in 1974? And it seems outside of history, which arguably says they want to treat public entities the same as private employers, what connects up with the 20-person limitation in legislative history? In legislative history, okay, now look at the language itself.  Your Honor. In legislative history, look at the statements from the Senate report and the House report, and the intent seems to suggest that they want to treat private employers and public employers the same, equal roles for both, give employees the same rights. Is this enough in your analysis to take in the 20-person limitation? If you take that legislative history and you then apply it on top of the language, which is perhaps not the most artful language we have codified, but if you take that history and apply it to the language, and you read the word also to then bring in the legislative history, employer means a person engaged in commerce with 20 or more employees. The term also means any agent or any statement of political subdivision. You take also to bring in the two clauses, and you apply legislative history on top of it, and it seems to match up, and that's consistent then, of course, with the other four circuits. The same issue. Do you agree that our circuit is kind of a tomahawk racer with a possible exceptional will to write? We don't have precedent on that. I do agree with that, Your Honor. So it's really up to us to look at the statute and read it to determine whether we think it is in any way ambiguous. Obviously, we don't think it's ambiguous. I'm persuaded, at least at this time, that the second portion of B is referring to also segregates that to be as a very rational reading of it. If that's right, then the 21st limitation would not apply. Right? That's correct. If you decide that also is separate and what follows the word also is separate from the first sentence, then that's correct, because as it's written on the page, the 20 employee threshold is all I can take from the first sentence. And if it is unambiguous, then we certainly never get to legislative history, right? That's a correct statement of the law as well. That's correct. You don't get to legislative history if it's ambiguous. I would respectfully suggest that, to underscore again, that it is simply a reasonable interpretation, two reasonable interpretations. Neither one has to be right or wrong. It's two reasonable interpretations of the same language. And I think that you have two reasonable interpretations of the statute, thereby justifying an analysis of the legislative history. Suppose instead of the word also means, Congress had said the term includes one or two, and then what? Well, Your Honor, I think that would have been a clearer way to reflect Congress's intent. Because if you look at the legislative history, it suggests that that's what they intended to do, to treat public and private employers the same, to bring the coverage equal. In fact, in the 1974 amendments, they wanted to do two things, bring the employee threshold down from 25 to 20, and to bring the applicability to governmental employers into the statute. But they didn't say includes. They said also means. They said also means. We wish they had said includes. But I think includes is consistent with the legislative history. And I think you can read the legislative history, and the other circuit courts have done this, or you can read the legislative history directly, of course. It's Senator Benson from Texas and other senators who were debating these changes in 1974. If you look at the intent, what was the intent? I don't know what happened, obviously, Your Honor, between that intent and the word also, as opposed to includes. But that doesn't mean if the court were to find that language is subject to two reasonable interpretations, that doesn't mean we should then, of course, ignore that legislative history, but rather we should bring that legislative history into the statute. So would it be more clear from saying includes? Yes, Your Honor, it would. But I think the legislative history strongly suggests what Congress's intent was with respect to the statute. Anything further? No, Your Honor. That's all the questions. No further questions. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith